UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------------x
MAX ZACH CORPORATION,       CASE NO. 3:23-CV-01088-VDO

           Plaintiff,       (JURY TRIAL DEMANDED)

  - against -       October 26, 2023

MARKER 17 MARINE, and
PREMIUM CARRIERS INC.,

           Defendants.
------------------------------------------------x

## SECOND AMENDED COMPLAINT

Plaintiff, Max Zach Corporation ("Plaintiff"), by and through its attorneys Fishman Decea & Feldman, as and for its Second Amended Complaint herein alleges the following:

### NATURE OF THE CASE

1. This action arises out of negligence, breach of contract, conversion, violation of the Carmack Act, and other wrongs of defendants. Defendant, Marker 17 Marine, LLC[1] was retained by Plaintiff in connection with various aspects of the modification and land transport of a 2006 48' Fountain EC, HIN No. FGQ48C41J506 yacht (the "Vessel"). Under the contract the Vessel modifications were to be completed by defendant, Marker 17 Marine, and included, among other things, retrofitting and repowering the Vessel with four Mercury Outboard 400 Racing Motors, at a cost of approximately $315,000 (the "Contract").

2. The Contract included the delivery of the Vessel by Marker 17 Marine to Plaintiff in Greenwich, Connecticut. Plaintiff paid the entire Contract price to Marker 17 Marine, at its

---

[1] Sued herein as Marker 17 Marine

insistence, before the Vessel was returned to it. To date, despite the fact that payment in full has been made, the Vessel has still not been delivered to Plaintiff as required by the Contract.

3. The Vessel was modified to specification by Marker 17 Marine, packaged, and loaded for transport from Wilmington, North Carolina to Greenwich, Connecticut. Defendant, Premium Carriers Inc., was the carrier selected by Marker 17 Marine to assist in the loading of the cargo and transport the Vessel *via* land transport. The Vessel was destroyed when, during transport, Premium Carriers Inc., under circumstances which are unknown to Plaintiff, flipped the trailer and the Vessel in New Jersey enroute to its delivery to Plaintiff.

4. The very facts of the occurrence, which are the subject of this action, warrant the inference of liability on the part of each defendant since the events upon which the claims herein are bottomed are (i) of a kind which ordinarily does not occur in the absence of someone's negligence; (ii) were caused by an agency or instrumentality within the exclusive control of the defendants; and (iii) were not due to any voluntary action or contribution on the part of Plaintiff.

## THE PARTIES

5. Plaintiff is a corporation formed and existing pursuant to the laws of the State of Delaware, with its principal place of business in Greenwich, Connecticut. Plaintiff is the owner of the Vessel.

6. Defendant, Marker 17 Marine, LLC ("Marker 17") is, upon information and belief, a corporation with its principal place of business at 7222 Market Street, Wilmington, North Carolina 28411.

7. Defendant, Premium Carriers, Inc., ("Premium") is, upon information and belief, a corporation formed and existing pursuant to the laws of the State of North Carolina, with its principal place of business at 2617 Possum Hill Road, Bath, North Carolina 27808.

JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this matter pursuant to (i) 28 U.S.C.A. § 1337, as this action involves the liability of a motor carrier under 49 U.S.C.A. § 14706 and the amount in controversy exceeds $10,000, exclusive of interest and costs

FACTS COMMON TO ALL CLAIMS

9. In late 2020 Plaintiff entered the Contract with Marker 17 to retrofit the Vessel and repower it with four Mercury Outboard 400 Racing Motors. The work included choosing a carrier to transport the Vessel to Plaintiff from North Carolina to Greenwich. The cost of the work to the Vessel was approximately $315,000, and it was paid in full.

10. In May 2021, after the work order was completed, Marker 17 retained Premium to transport the Vessel from North Carolina to Connecticut. The trailer and the truck to transport the Vessel were supplied by Premium and approved by Marker 17. Upon information and belief, the Vessel was loaded onto the trailer, after Marker 17 approved the equipment to be used for the transport, by Marker 17 and Premium.

11. Prior to loading the Vessel onto the trailer provided by Premium to transport the Vessel, Marker 17 had an opportunity to inspect the trailer and the truck designated by Premium to tow the Vessel. Prior to loading the Vessel Marker 17 knew, or should have known from sight alone, that the trailer was starkly insufficient to safely transport the Vessel across the street let alone across the East Coast of the United States. The Vessel overwhelmed the trailer in both size and weight.

12. Marker 17 also knew or should have known that the truck selected to tow the trailer and Vessel was by sight utterly insufficient in both power and size to transport the Vessel. Upon information and belief, the total weight of the boat, the four engines, a full fuel tank

(approximately 7 lbs. per gallon), full water tanks and personal gear by far exceeded the Gross Vehicle Weight Rating ("GVWR") of the trailer; in short, the needed trailer capacity was never achieved.

13. Notwithstanding Marker 17's actual or constructive knowledge of the inadequacy of the trailer and truck, it nonetheless agreed to go ahead with the retention of Premium and assisted Premium in loading the Vessel onto the trailer. After the Vessel was loaded on the trailer and attached to the truck, by any objective standard, Marker 17 knew or should have known, that both the trailer and truck were insufficient to transport the Vessel and that it was an accident waiting to happen.

14. Marker 17 should never have allowed Premium to transport the Vessel knowing the inadequacy of the trailer and the truck used to pull the trailer. Upon information and belief, because of the inadequacy of the trailer and truck used to transport the Vessel, Marker 17 knew, or should have known, that the Vessel was likely to be damaged if not destroyed.

15. Assuredly, the accident occurred on or about May 6, 2021, when, predictably, the trailer carrying the Vessel flipped; the Vessel, with a conservative fair market value of $750,000, was destroyed.

16. Thereafter, without any input from Plaintiff, the Vessel was towed from the accident site by Superior Towing and Transport, LLC, to its facility located in New Jersey, where the Vessel still sits today at the storage rate of $150 per day. As of October 26, 2023, the accrued and unpaid storage charges are $132,900, and defendants have done nothing to stem these damages which have accrued and will continue to accrue during the pendency of this action. The finished Vessel has not been delivered to Plaintiff as required by the Contract.

17. Plaintiff made demand on Marker 17 to return the payment made under the Contract, and for other damages, but Marker 17 has failed and refused to return the money paid under the Contract.

## FIRST CLAIM
(Negligence - Marker 17)

18. Plaintiff repeats and incorporates the allegations set forth above.

19. Marker 17 had a duty to (i) choose a competent carrier to transport the Vessel to its client, Plaintiff herein, (ii) properly load the Vessel onto the trailer to transport, and (iii) otherwise ensure that the Vessel would arrive to Plaintiff intact and operable as modified.

20. Marker 17 breached its duty when it failed to (i) choose a competent carrier to transport the Vessel back to Plaintiff, (ii) properly load the Vessel onto the trailer for transport, and (iii) otherwise ensure that the Vessel would arrive to Plaintiff intact and operable as modified.

21. The very facts of the occurrence, which are the subject of this action, warrant the inference of negligence on the part of Marker 17 since the events upon which the claims herein are bottomed are (i) of a kind which ordinarily does not occur in the absence of someone's negligence; (ii) were caused by an agency or instrumentality within the exclusive control of the Marker 17; and (iii) were not due to any voluntary action or contribution on the part of Plaintiff.

22. As a direct result of the negligence of Marker 17 as aforesaid, Plaintiff has been damaged in an amount to be determined upon the trial of this action but presently believed to be more than $1,400,000.

23. Accordingly, Plaintiff is entitled to a money judgment against Marker 17, in an amount to be determined upon the trial of this action but presently believed to be more than

$1,400,000 plus costs, expenses, pre-judgment interest and consequential damages which have accrued and will continue to accrue during the pendency of this action.

## SECOND CLAIM
(Marker 17 - Breach of Contract)

24. Plaintiff repeats and incorporates the allegations set forth above.

25. Plaintiff entered a Contract with Marker 17 to retrofit the Vessel and power it with four Mercury Outboard 400 Racing Motors, at a cost of approximately $315,000. The Contract included the returning of the finished Vessel to Plaintiff in either New York or Connecticut.

26. Plaintiff fulfilled all its obligations under the Contract, including payment of the full Contract price.

27. Marker 17 breached the Contract when it failed to return the Vessel to Plaintiff fully modified and retrofitted as required by the Contract.

28. As a direct result of the breach of Contract by Marker 17 as aforesaid, Plaintiff has been damaged in an amount to be determined upon the trial of this action but presently believed to be more than $1,400,000.

29. Accordingly, Plaintiff is entitled to a money judgment against Marker 17, in an amount to be determined upon the trial of this action but presently believed to be more than $1,400,000 plus costs, expenses, pre-judgment interest and consequential damages which have accrued and will continue to accrue during the pendency of this action.

## THIRD CLAIM
(Conversion - Marker 17)

30. Plaintiff repeats and incorporates the allegations set forth above.

31. Rather than deliver the Vessel to Plaintiff with "Collection On Delivery," Marker 17 demanded payment in full prior to the delivery of the Vessel. To take delivery of the Vessel,

Plaintiff capitulated to the pre-delivery payment demand by Marker 17. Despite payment in full, Marker 17 failed to perform under the Contract and, in addition, destroyed the Vessel it was obligated to deliver to Plaintiff.

32. The money paid under the Contract belonged to the Plaintiff. Despite demand for the return of the funds paid under the Contract, Marker 17 has failed and refused said demand.

33. Marker 17 has deprived Plaintiff of its money, without authorization from Plaintiff. As a result of the conversion by Marker 17, Plaintiff has been damaged.

34. Accordingly, Plaintiff is entitled to a money judgment against Marker 17, in an amount to be determined upon the trial of this action but presently believed to be more than $1,400,000 plus costs, expenses, pre-judgment interest and consequential damages which have accrued and will continue to accrue during the pendency of this action.

## FOURTH CLAIM
(Premium - 49 U.S.C.A. § 14706, et seq.)

35. Plaintiff repeats and incorporates the allegations set forth above.

36. Premium is a motor carrier engaged in interstate commerce and, upon information and belief, is authorized by the Federal Motor Carrier Safety Administration to transport property throughout the 48 contiguous United States.

37. Sometime in May 2021, Premium was retained by Marker 17, for the direct benefit of Plaintiff, to transport the Vessel from North Carolina to Connecticut.

38. On or about May 6, 2021, the Vessel being transported by Premium was destroyed while in transit in New Jersey.

39. Upon information and belief, the Vessel was tendered to Premium in good order and condition.

40. Premium failed to deliver the shipment or Vessel in good order and condition at destination.

41. By agreement dated May 18, 2022, Premium's insurance carrier notified Plaintiff that it had disallowed part of the claim.

42. As a result of the breaches and violations as aforesaid, Plaintiff has sustained actual damages in and amount to be determined at the trial of this action but presently believed to be more than $1,400,000. Less any amounts paid by Premium.

43. Plaintiff duly filed, in writing, a notice of claim with Premium for its loss and damage claim and demanded payment of each claim at issue. Premium's insurance carrier paid only a portion of the claim.

44. Accordingly, Plaintiff demands judgment against Premium on Claims Second and Third of the Second Amended Complaint, in the total amount of $1,400,000, together with prejudgment interest and for such other and further relief as this Court may deem just and proper.

WHEREFORE, Plaintiff demands judgment as follows:

(a) On its First Claim, a money judgment against Marker 17 in an amount to be determined upon the trial of this action but presently believed to be more than $1,400,000 plus costs, expenses, pre-judgment interest and consequential damages which have accrued and will continue to accrue during the pendency of this action.

(b) On the Second Claim, a money judgment against Marker 17 in an amount to be determined upon the trial of this action but presently believed to be more than $1,400,000 plus costs, expenses, pre-judgment interest and consequential damages which have accrued and will continue to accrue during the pendency of this action.

(c) On its Third Claim, against Marker 17 in an amount to be determined upon the trial of this action but presently believed to be more than $1,400,000 plus costs, expenses, pre-judgment interest and consequential damages which have accrued and will continue to accrue during the pendency of this action.

(d) On the Fourth Claim, a money judgment against Premium in an amount to be determined upon the trial of this action but presently believed to be more than $1,400,000, plus pre-judgment interest.

(e) On Claims First, Second and Third, awarding Plaintiff costs and attorneys' fees incurred, pre-judgment interest, together with punitive damages.

(f) Granting to Plaintiff such other and further relief as to this Court may seem just and proper.

Dated: Armonk, New York
      October 26, 2023

                                    FISHMAN DECEA & FELDMAN

                                    By: *Thomas B. Decea*
                                         THOMAS B. DECEA (ct 13099)

                                    A Member of the Firm
                                    200 Business Park Drive, Suite 200
                                    Armonk, New York 10504
                                    (914) 285-1400
                                    tdecea@dfdlawfirm.com

                                    *Attorneys for Plaintiff*
                                    *Max Zach Corporation*